**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

MAR 0 2 2017

LAWRENCE K. BAERMAN, CLERK
ALBANY

JOHN LAAKE a/k/a WINTER LAAKE,       )

    Plaintiff,       )

vs.       )

TURNING STONE RESORT CASINO,       )

    Defendant.       )

Civil Case No.: 6:17-cv-249 (TJM/TWD)

**CIVIL RIGHTS**
**COMPLAINT**
**PURSUANT TO**
**42 U.S.C. § 1983**

Plaintiff demands a trial by Jury.

## JURISDICTION

1.     This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3) and (4) and 2201.

## PARTIES

2.     Plaintiff: John Laake, 469 Grand Avenue, Aurora, Illinois, 60506.

3.     Defendant: Turning Stone Resort Casino, 5218 Patrick Road, Verona, New York, 13478.

## FACTS
## FIRST CAUSE OF ACTION
## SUPPRESSION OF FREE SPEECH AND FREE EXERCISE OF RELIGIOUS BELIEFS
## UNDER THE FIRST AND FOURTEENTH AMENDMENTS
## TO THE UNITED STATES CONSTITUTION 42 U.S.C. § 1983

4.     It is stated in the First Amendment of the Constitution of the United States the following:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.[1]

5.     President James Madison, speaking on First Amendments rights of citizens as found in the Constitution, addressed Congress on June 8, 1789, as follows:

---

[1] Amendment I of the Constitution of the United States.

> The people shall not be deprived or abridged of their right to speak, to write, or to publish their sentiments; and the freedom of the press, as one of the great bulwarks of liberty, shall be inviolable.[2]

6.   The Plaintiff (John Laake a/k/a Winter Laake) (hereinafter known as 'Plaintiff'), is a United States citizen and is an internationally known writer/speaker/practitioner of the occult, psychic, Pagan beliefs and witchcraft philosophies, which he considers his religion (hereinafter known as 'religion').

7.   The Plaintiff publicly speaks about his religion through many mediums, those being television, radio, published books, public speaking and conventions, *i.e.*, speaking to a public audience or one-on-one readings/discussions. The Plaintiff has reached hundreds of thousands of people through these mediums.

8.   The Turning Stone Resort Casino ("Turning Stone") is a resort owned and operated by the Oneida Indian Nation, Inc., in Verona, New York.

9.   The Plaintiff has the utmost respect for American Indians and American Indian heritage. The Plaintiff associates with American Indian witch-doctors and American Indian shaman throughout the United States, and especially in upstate New York, where the Turning Stone Resort Casino is located.  Plaintiff asserts that he is entitled to receive the same respect from the Defendant.

10.  For the dates of September 30 through October 2, 2016, the Plaintiff purchased a vendor booth at the convention hall located at and which is operated by the Turning Stone Resort Casino. (*See* Scare-A-Con webpage banner, Plaintiff's receipt for the purchase of his vendor booth, a photo of the outside of the Turning Stone Resort Casino, and also a photo of his booth, attached collectively hereto as **Group Exhibit A**.)

11.  The convention hall at the Turning Stone Resort Casino was open to the general public, and was a part of a horror/sci-fi and occult convention gathering of many individuals from around the country, including film-stars, musicians, artists, witchcraft practitioners, Indian consciousness witch-doctors, cosplay models, etc. The convention is entitled: 'Scare-A-Con.'

12.  The Turning Stone Resort Casino makes the following claims on their website regarding their convention center:

> ***It's your event and it's your good name***. Create an event to remember at Turning Stone Resort Casino.   You're invited to discover an

---

[2] *Annals of Congress*, House of Representatives, 1st Congress, 1st Session, June 8, 1789, p. 451-53, Washington, DC: Gales and Seaton, 1834.

exceptional experience at the Northeast's most distinctive address for meetings, conventions and events. Our ability to accommodate up to 2,000 guests in 125,000 square feet of flexible all-purpose meeting and convention space ensures any gathering is an unforgettable one. Our event planning professionals will help to make sure that every detail is perfectly planned so that you can focus on being the perfect host. *No matter your plans, we're ready to meet your highest demands* offering incomparable facilities, superior service and outstanding recreational activities.[3]

13.    In the *Meeting & Events Facilities Guide* of Turning Stone Resort Casino, it also makes the following claims:

Large or small, *your group will be effectively and pleasantly accommodated in our Conference Center. ... These are the perfect rooms for small-group discussions*, seminars and boardroom-style meetings.[4]

14.    This is blatantly false advertising on Defendant's website. Plaintiff was not pleasantly accommodated by the Defendant at the convention center 'Scare-A-Con' event. As Defendant's website claims, it was supposed to be Plaintiff's event, and his good name was on the line in how the public perceived him, and regarding how Defendant conducted themselves towards Plaintiff. And supposedly, it didn't matter what Plaintiff's plans were, Turning Stone Resort Casino held out, falsely, that they were going to accommodate him.

15.    The Plaintiff arrived on Friday, September 30, 2016, and set up his rented booth with his books and artwork, along with signage explaining his name and religious views. It was at that time (3 pm.) that Plaintiff (Winter Laake) began to interact with the public, who entered the convention center. This interaction was mainly the discussion of his religious philosophies, through one-on-one readings purchased by individuals from the general public – the attendees of the convention. At all times herein, Plaintiff was respectful and peaceful, and he conducted himself in an orderly manner throughout the event.

16.    The Plaintiff estimates that he interacted with 59 people during the first day of the convention, and conducted one-on-one religious/psychic/occult readings with each person.

17.    On the following day, Saturday, October 1, 2016, at 11 am., the Plaintiff again arrived at the convention hall, and began to interact with the general public, who attended the

---

[3] https://www.turningstone.com/groups-events/meetings-events (emphasis added).
[4] *Meeting & Events Facilities Guide*, Turning Stone Resort Casino, pg. 4.

'Scare-A-Con' event at the Turning Stone Resort Casino. The Plaintiff conducted one-on-one personal occult/psychic/religious readings with each person who approached his booth.

18.   At 3 pm. on Saturday, October 1, 2016, the Plaintiff was suddenly and abruptly approached by the management of the Turning Stone Convention Center, and was told to stop espousing his Pagan beliefs and black magic religion and philosophy through one-on-one occult/psychic/religious readings with the convention attendees (general public). When the Plaintiff asked the manager, "Why?", the Plaintiff was told that it was against Turning Stone's policy to conduct such religious activities (psychic/occult/witchcraft) on Turning Stone's property.

19.   The Plaintiff responded by stating that this was a suppression of his freedom of speech and freedom of religion. The Plaintiff further pointed out that this space was open to the general public, and was rented by the Plaintiff for this specific religious purpose -- and that the Plaintiff has the right to exercise his First Amendment freedom of speech and freedom of religion under the United States Constitution.

20.   The manager of the Turning Stone Resort Casino replied that this was Indian land and the religious activities that Plaintiff was conducting/espousing were against the Turning Stone Resort Casino rules, and that if it were to continue, the Plaintiff would be physically removed from the convention floor. This discussion took place in the presence of thousands of attendees/passersby.

21.   The Plaintiff further responded that the convention hall and casino are licensed by the State of New York, and that it is an asylum/rented space which Plaintiff purchased from Defendant, and it is open for the general public, whom Defendant, Turning Stone Resort Casino, invited. Plaintiff pointed out that whatever rules against his First Amendment free speech and religious practices may be written in Turning Stone's policy, they are superseded by the United States Constitution, and that by their silencing the Plaintiff's religious beliefs and speech, through any means, it would still violate Plaintiff's First Amendment freedom of religion and freedom of speech rights.

22.   At that time, the Turning Stone manager enforced their policy against Plaintiff's religion and speech once more, and left. Plaintiff was prohibited by Defendant from speaking to the public one-on-one, or from giving tarot/psychic readings.

23.   Plaintiff asserts that Turning Stone Resort Casino's policy is irrational and unreasonable, by imposing unjustifiable restrictions on the exercise of his protected Constitutional rights. Because their policy is irrational and unreasonable, its application violates the protections guaranteed to him as a United States citizen, under the First and Fourteenth Amendments to the United States Constitution.

24. The Plaintiff's free speech rights and free exercise of his religious belief rights were violated by Defendant's wrongful actions against him.

25. Similar wrongful conduct which Defendant displayed, has been documented in the following free speech and civil rights cases, with the conclusions thereto provided:

26. *Concerned Women for America, Inc. v. Lafayette County*, 883 F.2d 32 (5th Cir. 1989): The County library, by allowing various groups to use its auditorium, had created a public forum, and could not deny access to groups whose meetings had political or religious content. Library officials could impose reasonable time, place or manner restrictions on access to the auditorium, provided any regulations are justified, without reference to the content of the regulated speech.

27. *Lamb's Chapel v. Center Moriches Union Free School Dist.*, 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d. 352 (1993). A school district refused to allow a church to access a school's premises to show films dealing with family and child-rearing issues faced by parents. This amounted to viewpoint discrimination, and could not withstand First Amendment scrutiny, in the decision rendered by the Supreme Court of the United States.

28. In *Elrod v. Burns*, respondents, who were non-civil service employees of the Cook County, Illinois, Sheriff's Office, brought suit against the newly-elected Sheriff, asserting that, in violation of the First and Fourteenth Amendments, respondents were fired only because they were not in favor of or sponsored by the Democratic Party. The case went to the Court of Appeals, where the justices concluded that, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (*Elrod v. Burns*, 427 U.S. 347 (1976) quoting *New York Times Company v. United States*, 403 U.S. 713 (1971)).

29. At the Minnesota annual state fair, members of the respondents, International Society for Krishna Consciousness, fought to protect their First Amendment right to proselytize on the fairgrounds. In conclusion, the Supreme Court determined that they were allowed to proselytize at designated booths. (*Heffron v. Int'l Soc. for Krishna Consc.*, 452 U.S. 640, 645 (1981)).

30. In *Healy v. James*, which was another United States Supreme Court case, a state college denied official recognition to a group of students who wished to form a chapter of Students for a Democratic Society. This case brought up First Amendment rights matters. The District Court stated, "At the outset we note that state colleges and universities are not enclaves immune from the sweep of the First Amendment. 'It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.'" (*Healy v. James*, 408 U.S. 169, 180 (1972) quoting, *Tinker* v. *Des Moines Independent School District*, 393 U.S. 503, 506 (1969)).

31.  In *Hammond v. South Carolina State College*, a district judge was asked to decide a case before him involving a meeting on a campus of 300 students, who wished to state their opinions of school practices. He stated that a school is not like a hospital or a jail entrance. It is a public place. Even though it is dedicated for specific uses; the premises should not be seen as though it is simply private property. (*Hammond v. South Carolina State College*, 272 F.Supp. 947 (D.C. S.C. 1967)).

32.  In a case that went to the Supreme Court in 1974, the Oneida Indian Nation won a land claim case against Oneida County in New York, based upon the Aboriginal title common law doctrine. In conclusion, Justice Rehnquist, with whom Justice Powell joined, concurred as follows:

> "... the Government, by transferring land rights to Indian tribes, **has not placed the land beyond federal supervision.**[5]

33.  Notably, as stated by the justices, the Oneida Nation must follow the laws of the federal government of the United States, including the United States Constitution. That means that, even though they have obtained certain land occupancy rights from that case, the Oneida Nation are not a law unto themselves.

## SECOND CAUSE OF ACTION
## DEPRIVATION OF CIVIL RIGHTS (EQUAL PROTECTION)
## UNDER THE FOURTEENTH AMENDMENT OF
## THE UNITED STATES CONSTITUTION
## 42 U.S.C. § 1983

34.  Plaintiff incorporates paragraphs 1 through 33 as though fully set forth herein.

35.  The Fourteenth Amendment of the Constitution states the following regarding the rights of its citizens:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person ... within its jurisdiction the equal protection of the laws.[6]

36.  On Sunday, October 2, 2016, Plaintiff (Winter Laake) arrived at the Turning Stone convention center at 11 am. to again be told by Turning Stone managers not to conduct discussions/readings, or any other occult/psychic activities on the premises, and that if Plaintiff did not comply, he would be physically removed.

---

[5] (*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974)) (emphasis added).
[6] (Fourteenth Amendment of the Constitution, §1).

37.   Being forced to comply by threat of physical removal by Turning Stone managers, Plaintiff was forced to turn away 73 people of all faiths from any one-on-one religious/psychic discussions with him.  All these people were anxiously waiting to receive readings from the Plaintiff.  Furthermore, this was a potential loss of substantial long-term income for Plaintiff, since many of these people could have become long-term regular clients of his, as a result of the potential one-on-one conversations with the Plaintiff, which the Defendant wrongfully prevented.  Furthermore, Defendant's actions suppressed Plaintiff's free speech and civil rights, at great loss and cost to Plaintiff.

38.   The Plaintiff asserts that his freedom of religion and freedom of speech rights, which are protected by the United States Constitution, were violated by the Turning Stone Resort Casino.  This loss, humiliation and mental distress in front of thousands of convention attendees, and potential and actual clients, was horrendous, and continues to cause Plaintiff extreme mental distress.

39.   The Plaintiff seeks a ten million dollar remedy for this outright and obvious suppression by the Turning Stone Resort Casino of Plaintiff's religion and of his free speech.

40.   The Plaintiff witnessed other vendors at the Turning Stone Convention hall, who were permitted to conduct their religious practices unabated by Turning Stone managers.  The Plaintiff asserts that he has been unreasonably singled-out, targeted and discriminated against for his religious beliefs.

41.   Plaintiff suffered deprivation of his civil rights (equal protection) by the wrongful conduct of Defendant.

42.   Turning Stone Resort Casino's policy, on its face and as applied, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and similar guarantees, as are found in the New York State Constitution, by denying Plaintiff his free speech rights -- which rights were, notably, freely and without restriction allowed to others in similar situations at the same Scare-A-Thon convention.  Plaintiff is entitled to civil protections of state and federal law.

43.   The Equal Protection Clause of the Fourteenth Amendment requires each state to provide equal protection under the law to all people within its jurisdiction.  This clause has been the basis for many decisions rejecting irrational or unnecessary discrimination against people belonging to various groups.[7]

---

[7] (Fourteenth Amendment to the United States Constitution, Art. I).

### THIRD CAUSE OF ACTION
### INFLICTION OF EXTREME MENTAL AND EMOTIONAL DISTRESS
### BY DEFAMATION UNDER THE LAWS OF THE STATE OF NEW YORK

44.     Plaintiff incorporates paragraphs 1 through 43 as though fully set forth herein.

45.     The Constitution of the State of New York guarantees equal protection to United States
        citizens under the law, and it prohibits discrimination against their civil rights.  It also
        guarantees religious liberty and freedom of speech and the press.  It states in Article I of
        the Bill of Rights, the following, in regards to religious liberty:

> The free exercise and enjoyment of religious profession and worship,
> without discrimination or preference, shall forever be allowed in this
> state to all humankind; and no person shall be rendered incompetent
> to be a witness on account of his or her opinions on matters of religious
> belief ... [8]

46.     Furthermore, the Constitution of the State of New York states the following with regards
        to freedom of speech and freedom of the press:

> Every citizen may freely speak, write and publish his or her sentiments
> on all subjects, ... and no law shall be passed to restrain or abridge the
> liberty of speech or of the press.[9]

47.     Regarding equal protection of laws, the Constitution of New York also prohibits
        discrimination in civil rights issues.  It definitively states:

> No person shall be denied the equal protection of the laws of this state
> or any subdivision thereof. No person shall, because of race, color,
> creed *or religion*, be subjected to any discrimination in his or her civil
> rights by any other person *or by any firm, corporation, or institution*,
> or by the state or any agency or subdivision of the state.[10]

48.     The Plaintiff suffered continued, unabated, harassment by Turning Stone Resort Casino
        management for most of the event weekend, and continued to be threatened repeatedly by
        Turning Stone management with physical removal, if he did not capitulate to Turning
        Stone's demands to stop speaking with the general public at his booth.  Through such
        unlawful conduct by Defendant, which was wrongfully displayed against him, Plaintiff's
        civil rights were violated by the Defendant, and Plaintiff was thereby denied his equal
        protection rights under the laws of the State of New York.

---

[8] (New York Constitution, Art. I, § 3).

[9] (New York Constitution, Art. I, § 8).

[10] (New York Constitution, Art. I, § 11) (emphasis added).

49.     The Plaintiff is perplexed, and has furthermore been defamed by the treatment of the
        Turning Stone Resort Casino against him. The Turning Stone Resort Casino is erected
        on Indian land, but is licensed by the State of New York, and conducts business with and
        interacts with individual citizens of the United States, from the 1990's until the present.
        This license must adhere to the Constitution, which endows the rights of freedom of
        speech and freedom of religion. No rule book or corporate policy supersedes these rights
        as found in the Constitution of the United States and in the Constitution of the State of
        New York.

50.     Besides all this humiliation and defamation, Plaintiff contends that the Defendant wasted
        his time by inviting him to become a vendor at the Scare-A-Con convention -- whereupon
        when he then arrived there and set up his vendor booth, Defendant then inexplicably
        disallowed him from speaking to the public. Plaintiff traveled from Illinois all the way to
        upstate New York to become a vendor at the Scare-A-Con convention. Plaintiff's time is
        very valuable to him. Yet, despite being forbidden by Defendant to discuss his religion
        with the general public, Plaintiff continued to attempt to maintain a *presence* at the
        convention.

51.     Plaintiff furthermore lost substantial potential earnings that he could have made over that
        event weekend. Indeed, a very long line of people were waiting to speak with him, as he
        was suddenly silenced, and his booth essentially shut down by the Defendant, in front of
        all those potential customers of the Plaintiff, and thousands of other passersby.

52.     Plaintiff was harmed by and suffered extreme mental and emotional distress by the
        wrongful conduct of Defendant, by its defamation and humiliation of him in front of
        thousands of Scare-A-Con convention attendees, all while Plaintiff was quietly and
        respectfully trying to share his religion, and to work at his vendor booth.

53.     **PRAYER FOR RELIEF**

        **WHEREFORE,** PLAINTIFF JOHN LAAKE states a claim for and requests that this
Court grant him the following relief: $10,000,000.00 in damages for violation of Plaintiff's civil,
religious and free speech and equal protection rights by the aforesaid wrongful actions of
Defendant against him, in violation of the law, as well as defamation damages, false advertising,
extreme mental and emotional distress, all incurred to Plaintiff by the Defendant's wrongful
conduct and actions. Further, as a direct and proximate result of Defendant's wrongful conduct
and actions, Plaintiff suffered significant economic, emotional and professional harm, including
the loss of ongoing income from potential long-term clients, whom Plaintiff was forbidden by
Defendant to speak with and to reach. Plaintiff requests a Jury Trial herein. Plaintiff seeks to
recover damages and secure equitable relief under all pertinent acts of Congress providing for the
protection of his civil rights as a citizen under the United States Constitution, and including the
Constitution of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 28 2017

Respectfully submitted,

By: _____

John Laake a/k/a Winter Laake
Pro Se Plaintiff
469 Grand Avenue
Aurora, IL 60506
Ph: (708) 352-0424
Email: wolfloki@yahoo.com

- 10 -