UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN LAAKE a/k/a WINTER LAAKE,

                                        Plaintiff,

         -v-                                                    6:17-cv-00249

TURNING STONE RESORT CASINO,

                                        Defendant.
_____

THOMAS J. McAVOY,
Senior United States District Judge


## DECISION & ORDER

### I.      INTRODUCTION

Plaintiff John Laake commenced this action *pro se*, asserting that Defendant Turning Stone Resort Casino violated his constitutional rights and committed common law torts against him. *See* Compl, dkt. # 1.  In response, Defendant filed the instant motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. # 7.  Plaintiff submitted a response to the motion, dkt. # 10, and Defendant submitted a reply.  Dkt. # 14.   For the reasons that follow, the Rule 12(b)(1) portion of the motion is granted.

### II.     STANDARD OF REVIEW

A motion brought pursuant to Fed. R. Civ. P. 12(b)(1) challenges the subject matter of the Court to address a case or certain claims in the case.  A case is to be dismissed for lack of subject matter jurisdiction pursuant to  Fed. R. Civ. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *Makarova v. United*

1

*States*, 201 F.3d 110, 113 (2d Cir. 2000). A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002); *see also Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996). When a defendant moves to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Medical Ctr. v. Watkins*, 11 F.3d 560, 562 (2d Cir. 1993). For the purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." *Id.*

Both the movant and the pleader may use affidavits and other pleading materials to support or oppose motion to dismiss for lack of subject matter jurisdiction. *See Makarova*, 201 F.3d at 113; *Filetech S.A. v. France Telecom, S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *John Street Leasehold, LLC v. Capital Mgt. Res., L.P.*, 2001 WL 310629, at *2 (S.D.N.Y. March 29, 2001). Further, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Gunst v. Seaga*, 2001 WL 1032265, at *2 (S.D.N.Y. March 30, 2007) (quoting *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129 (2d Cir. 1998)). "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." *Lopresti v. Merson*, 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21, 2001). A motion brought under Fed. R. Civ. P. 12(b)(1) must be considered before any other motions because dismissing the claim under 12(b)(1) would render all other objections and defenses moot. *See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *see also World Touch Gaming v. Massena Mgmt., LLC*,

2

117 F. Supp. 2d 271, 274 (N.D.N.Y. 2000).  Dismissal pursuant to Rule 12(b)(1) has no

bearing on the merits of the case and, therefore, the Court's dismissal can have no *res*

*judicata* effect. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d

Cir. 1996) (quoting *Exchange Nat'l Bank v. Touche Ross & Co.*, 544 F.2d 1126, 1130-31

(2d Cir. 1976)).

## III.    BACKGROUND

Except as noted, the following facts are undisputed. Defendant Turning Stone

Resort Casino ("Defendant" or "TSRC") is owned and operated by the Oneida Indian

Nation of New York ("the Nation").  *See* Compl., dkt. # 1, ¶ 8.[1]  The Nation is a federally

recognized Indian tribe. *See* Indian Entities Recognized and Eligible To Receive Services

From the United States Bureau of Indian Affairs, 82 FR 4915, 4917.

On September 30, 2016, TSRC hosted an event called "Scare-a-Con: Horror & Pop

Culture Fan Convention" at their venue in Verona, New York.  *See* Starsia Decl., ¶ 2 and

Ex. 1; Compl., ¶¶ 8-10.   The Scare-a-Con event is a horror and science fiction gathering

that is open to the general public. Compl., ¶ 11.  TSRC contracted with JoHaw

Productions, LLC, which facilitated the Scare-a-Con event. *See* Starsia Decl., ¶ 2 and Ex.

1.  Under the terms of the contract between JoHaw and TSRC, JoHaw agreed "that no

actions of a paranormal nature will be performed at TSRC, during the event, in hotel

rooms, or in/on other TSRC property, and shall ensure that each exhibitor, entertainer,

and celebrity that will be onsite and whose exhibit or appearance relates to paranormal

---

[1]While Plaintiff asserts in the Complaint that "Turning Stone Resort Casino . . . is a resort owned and operated by the Oneida Indian Nation, Inc.," Compl., ¶ 8, he does not challenge in his response to the motion Defendant's assertion that operation of TSRC is an activity of the Nation.

activities will only display material, take photographs, sign autographs, and participate in question and answer sessions and will not demonstrate the use of any materials or perform any actions of a paranormal nature while at TSRC." Starsia Decl., ¶ 2 & Ex. 1, p. 7.

Plaintiff purchased a vendor booth for the Scar-a-Con event that would extend through October 2, 2016. Compl., ¶ 10. On September 30, Plaintiff set up his vendor booth at the event and conducted tarot card readings, occult readings, and demonstrations of other religious philosophies. *Id.*, ¶¶ 15-16. On October 1, TSRC staff approached Plaintiff and told him that his conduct was improper and would need to stop. *See* Compl., ¶ 18; Def. Mot. Dismiss, p. 3.[2] TSRC staff also told Plaintiff that if he continued the prohibited conduct he would be forced to leave the premises. Compl., ¶¶ 19-22. After some protest, Plaintiff apparently complied and refrained from engaging in the prohibited conduct for the rest of the day. *See* Def.'s Mot. Dismiss at p. 4.

Plaintiff returned to the event the following day, was again told by TSRC staff that he could not "conduct discussion/readings, or any other occult/psychic activities on the premises, and that if [he] did not comply, he would be physically removed." Compl. ¶ 36. Plaintiff complied with the requirement that day. *Id.* ¶ 37.

Plaintiff brings the instant action asserting claims for the deprivation of his constitutional rights of free speech and free exercise of religion, for the deprivation of his constitutional right of equal protection, for the infliction of emotional distress under New

---

[2]Plaintiff contends that he was told that his conduct "was against Turning Stone's policy [prohibiting] religious activities (psychic/occult/witchcraft) on Turning Stone's property." Compl., ¶ 18. Defendant contends that Plaintiff was told his conduct violated the contractual provisions with JoHaw that prohibited actions or demonstrations of a paranormal nature. Def. Mot. Dismiss, p. 3. Nevertheless, the reason Plaintiff was told to stop his activity is immaterial to resolution of the Rule 12(b)(1) portion of the motion.

York common law, and for defamation under New York common law.  *See generally*, Compl.  For relief, Plaintiff seeks $10 million in damages. Compl., ¶ 53.

## IV.    DISCUSSION

### a.    Subject Matter Jurisdiction-Tribal Sovereign Immunity

As indicated above, the Nation is a federally recognized Indian tribe. *See* 82 FR 4915, 4917.   "As a matter of federal common law, an Indian tribe enjoys sovereign immunity from suit except where 'Congress has authorized the suit or the tribe has waived its immunity.'" *Garcia v. Akwesasne Hous. Auth.*, 268 F.3d 76, 84–85 (2d Cir. 2001) (quoting *Kiowa Tribe v. Manufacturing Techs., Inc.*, 523 U.S. 751, 754, 118 S. Ct. 1700, 140 L. Ed.2d 981 (1998) and citing *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 356–57 (2d Cir. 2000)).  "[C]ongressional abrogation of tribal immunity, like congressional abrogation of other forms of sovereign immunity, 'cannot be implied but must be unequivocally expressed.'"  *Bassett*, 204 F.3d at 356–57 (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S. Ct. 1670, 56 L. Ed.2d 106 (1978)).

Tribal immunity extends beyond self-governance to tribe-owned commercial enterprises such as gambling venues. *See Kiowa Tribe*, 523 U.S. at 758.  Courts have recognized TSRC as entitled to tribal sovereign immunity as an enterprise of the Nation. *See Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 305 (N.D.N.Y. 2003)(noting that "the doctrine of tribal sovereign immunity bars suits for damages against a tribe ... including suits arising from its off-reservation commercial activities ... and the activities of a tribal entity such as the [Turning Stone] Casino")(citations omitted).

Plaintiff neither argues nor demonstrates that Congress abrogated the Nation's or

TSRC's tribal immunity for the underlying suit or similar claims, or that either waived its tribal immunity.  Instead, Plaintiff argues that Defendant's tribal immunity is superseded by the Indian Civil Rights Act of 1968 ("ICRA").  *See* Pl.'s Resp., Dkt. # 10, at p. 6.

Section 1302 of ICRA restricts Indian Nations' powers of self-government from, *inter alia*, abridging the constitutional rights entitled to all United States citizens such as the freedom of speech, of the press, and the free exercise of religion. *See* 25 U.S.C. § 1302(a)(1).  However, "ICRA provides no private right of action against a tribe or tribal officials and may only be enforced in tribal court or by means of a petition for habeas corpus in federal court."  *Pitre v. Shenandoah*, 633 F. App'x 44, 45–46 (2d Cir. 2016)(citing *Santa Clara Pueblo*, 436 U.S. at 59–61, 71–72, 98 S. Ct. 1670 and *Shenandoah v. Halbritter*, 366 F.3d 89, 91–92 (2d Cir. 2004)); *see Shenandoah v. U.S. Dept. of Interior*, 159 F.3d 708, 713 (2d Cir. 1998)("Although Title I of ICRA lists a number of substantive rights afforded to individuals that serve to restrict the power of tribal governments, *see* 25 U.S.C. § 1302, Title I does not establish or imply a federal civil cause of action to remedy violations of § 1302.").  Because the underlying action seeks monetary damages and is not a habeas corpus petition, ICRA provides Plaintiff no avenue for relief.  *See Boozer v. Wilder*, 381 F.3d 931, 394 n. 2 (9th Cir. 2004)(In federal court, a habeas corpus petition "is the only avenue for relief from a violation of ICRA.").

The Court finds that the Defendant is entitled to tribal sovereign immunity in the instant action.  Accordingly, this Court lacks subject matter jurisdiction over this matter, *see Frazier*, 254 F. Supp. 2d at 305 ("Courts lack subject matter jurisdiction to determine claims barred by tribal sovereign immunity.")(citing *Garcia*, 268 F.3d at 84), and the Rule

6

12(b)(1) portion of Defendant's motion must be granted.  Because better pleading would not cure the lack of subject matter jurisdiction, Plaintiff is not given leave to replead.  The Court need not address the substance of the Rule 12(b)(6) portion of the motion.

## V.    CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss [dkt. # 7] is **GRANTED**.  The Complaint [dkt. # 1] is **DISMISSED** for lack of subject matter jurisdiction. The Clerk of the Court may close the file in this matter.

**IT IS SO ORDERED.**

Dated:  October 25, 2017

Thomas J. McAvoy
Senior, U.S. District Judge